UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERGEI POGADAEV, et al.,

    Plaintiffs,

v.

AEROFLOT-RUSSIAN AIRLINES,

    Defendant.

Case No. 16-cv-04718-RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Husband and wife plaintiffs Sergei Pogadaev and Irina Pogadajeva were booked on a roundtrip to and from Russia on flights operated by defendant Public Joint Stock Company "Aeroflot - Russian Airlines." They entered and traveled within Russia on Aeroflot without incident. When plaintiffs sought to board their flight back out of the country—from Moscow to Paris—Irina was denied boarding on grounds that her passport was set to expire in fewer than 90 days, and therefore was not valid for travel under "the Schengen Borders Code." In this action, plaintiffs seek to recover approximately $12,400 in damages they contend they suffered as a direct result of Irina having been denied boarding.

Pursuant to Civil Local Rule 7-1(b), the parties' cross-motions for summary judgment have been submitted for decision without oral argument. Because the undisputed facts show that defendant is not liable given Irina Pogadajeva's failure to present a passport that was sufficient under the applicable rules, defendant's motion will be granted and plaintiffs' motion will be

denied.

## II. BACKGROUND

In July of 2016, Plaintiffs were engaged in international travel by air pursuant to non-refundable Aeroflot passenger tickets that provided for roundtrip carriage from and to Italy, as follows: Florence (Italy) to Paris (France) to Moscow (Russia) to Kemerovo (Russia) to Moscow to Paris to Florence. Plaintiffs point out that the Aeroflot tickets were purchased as part of a larger round trip beginning and terminating in San Francisco, and including travel through Germany.

There is no dispute that on the return leg from Moscow to Paris, Irina Pogadajeva was denied boarding on Aeroflot Flight SU 4454, for the proffered reason that her U.S. Passport was not valid for travel to France and Italy under the Schengen Borders Code. There is also no dispute that Sergei Pogadaev was not expressly denied boarding, although he understandably elected to stay behind with his wife. Plaintiffs then obtained tickets for transport on Air France to Paris, and on to San Francisco, but in doing so incurred the additional costs they claim in damages in this action. The record is not clear as to why the pending expiration of Irina Pogadajeva's passport did not preclude her from traveling on the Air France flight.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case

with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

The Warsaw Convention, drafted in 1929, previously governed exclusively the rights and liabilities of passengers and carriers in "international" transportation by air. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999). The Montreal Convention is the successor treaty to the Warsaw Convention, *see Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 996 (9th Cir.

2002)). It retains many of the same provisions and terms as the original Warsaw Convention, and courts have continued to rely on cases interpreting provisions of the earlier treaty where the equivalent provisions in the Montreal Convention are substantively the same. *See e.g., Narayanan v. British Airways*, 747 F.3d 1125, 1127, n. 2 (9th Cir. 2014).

The express language of Article 29 of the Convention makes it clear that it, like the earlier Warsaw Convention, preempts a passenger's federal or state law claims whether "in contract or tort," and exclusively governs the rights and liabilities of the parties. *See Tseng*, *supra*, 525 U.S. at 161 (the Convention "precludes passengers from bringing actions under local law," even when they are unable to establish liability under the Convention); *Carey v. United Airlines*, 255 F.3d 1044 (9th Cir. 2001).

Article 19 of the Montreal Convention provides:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Furthermore, Article 20 exonerates the carrier from liability for delay damages "to the extent that [claimant's] negligence or wrongful act or omission caused or contributed to the damage." Aeroflot contends that the effect of these provisions is to bar plaintiffs' claims as long as the decision to deny boarding was legally correct. Plaintiffs do not challenge that basic point, and instead argue only Aeroflot incorrectly or unreasonably applied the rules in concluding that Irina should be denied boarding.[1]

"Carriers are responsible for verifying that international passengers have the correct travel

---

[1] Aeroflot argues it is entitled to summary judgment as to Sergei Pogadaev's claims because the undisputed facts show he was not denied boarding at all. Given the conclusion in this order that Irina was not wrongfully denied boarding, the court need not reach the question of whether Sergei's choice to stay behind could have been deemed "voluntary" even if Irina had a viable claim.

CASE NO. 16-cv-04718-RS
4

documents under the Schengen Agreements, and they face penalties for failing to do so . . . . Whether or not [the carrier] advised its passengers of the need to comply with international law, such law would apply." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 598 (5th Cir. 2010). Here, the undisputed facts show that Aeroflot is not liable for Irina Pogadajeva's alleged delay under Article 19 of the Montreal Convention because it resulted from her own failure to present a travel document that complied with the requirements of the Schengen Borders Code for travel to France and Italy, as her U.S. Passport was set to expire in fewer than 90 days.

The Schengen Borders Code permits people to travel freely within the Schengen area (consisting of 26 European countries, including France and Italy), if the traveler otherwise qualifies to enter the Schengen area, by crossing an official external border in a manner required under the provisions of the Code. Article 6 of the Code provides, in pertinent part,

> the entry conditions for third country nationals shall be the following:
>
> (a) they are in possession of a valid travel document entitling the holder to cross the border satisfying the following criteria:
>
> (i) its validity shall extend at least three months after the intended date of departure from the territory of the Member States.

Here, there is no factual dispute that Irina Pogadajeva's passport did not meet this requirement. Plaintiffs' primary argument is that Aeroflot acted inconsistently, and therefore unreasonably, because it allowed Irina to board the inbound flights at a time when it presumably could have figured out from her itinerary that there could be a problem on the outbound portion of the journey. Plaintiffs have not shown, however, that the passport was already within 90 days of expiration at the time of the inbound flights. As such, it was not "inconsistent" to permit boarding when the passport's expiration date was outside the 90 window but to deny it once that window had closed. Nor have plaintiffs shown that Aeroflot was under any legal duty to foresee

the issue and to warn plaintiffs of it in advance.[2]  Accordingly, plaintiffs' claims necessarily fail, and defendant is entitled to summary judgment.[3]

## V. CONCLUSION

Plaintiffs' motion for summary judgment is denied, and defendant's motion is granted.  A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: July 31, 2017

_____
RICHARD SEEBORG
United States District Judge

---

[2] There is also no reason to believe that allowing a passenger to make an inbound journey with the 90-day window soon closing necessarily will create a problem on the outbound leg.  For all a carrier might know, a passenger may be fully intending to receive a passport renewal during the trip.

[3] Plaintiffs' additional argument that a different EU regulation demonstrates Aeroflot acted unreasonably is unavailing for numerous reasons, including plaintiffs' concession that it "is not an issue in this case."